## RES JUDICATA—TAX TITLE—PRACTICE.

EXILDA DESNOYERS ET AL. V. L. T. DENNISON.

[Cuyahoga Circuit Court, December 22, 1899.]

Caldwell, Marvin and Hale, JJ.

1. ACTIONS TO QUIET TITLE—MATTERS TO BE LITIGATED.
    In an action to quiet title, all matters affecting the title of the parties to the action may be litigated and determined, and the judgment therein is final and conclusive.
2. BAR TO ALL WITHIN THE ISSUE.
    The judgment of the court, in such cases, is conclusive as to all questions within the issue, and which might have been litigated, whether formally litigated or not.
3. RULE APPLIES TO TAX LIENS.
    This rule applies to one claiming a lien by virtue of a tax-deed, who, though not made a defendant by plaintiffs in an action to quiet title, was made a defendant, and served with summons, by answer and cross petition of another defendant, and who failed to file any pleading sitting up his claim.
4. TAXES SUBSEQUENTLY PAID UNDER BELIEF OF OWNERSHIP.
    Where taxes were paid under an opinion that the person who paid them owned the land, the rule that he who asks equity must do equity applies when the true owners seek to have their title quieted. Therefore, taxes so paid for years subsequent to those barred by the judgment in a former action, should be paid by plaintiffs.

APPEAL by plaintiff.

MARVIN J.

This case comes into this court by appeal.

The purpose of the suit on the part of the plaintiffs is to have their title in certain real estate, described in the petition, quieted as against the defendant.

The facts, as shown by the pleadings and the evidence, are: That the plaintiffs are in possession of the real estate, the title to which is

involved; that they are the owners in fee simple of such real estate, except as the same may be affected by the rights of the defendant.

The taxes upon said premises, for the years 1893 and 1894, were delinquent, and, for that reason, such premises were duly advertised and offered for sale at delinquent tax sale, by the treasurer of the county, and were purchased at such sale by the defendant, on February fifth, 1895, a certificate of such sale being then issued to him. More than two years thereafter, said premises not having been redeemed, a deed of the premises was executed by the county auditor and delivered to the defendant, on December 16, 1897,—the defendant, having paid the taxes and penalty for 1893 and the taxes for 1894, at the time of said tax sale, and thereafter and before the date of said deed, having paid the taxes upon the premises for the years 1895, 1896 and 1897. Since the date of said auditor's deed, the defendant has paid taxes upon said premises for the year 1898, the amount of such payment being $31.46, and the payment having been made on December 5, 1898.

In the month of February, 1896, these plaintiffs commenced an action in the court of common pleas of this county, against H. G. Burke and Clara Newman, setting up their ownership of these premises and averring that each of the defendants in that action claimed an interest in the premises, and praying that their title in the premises might be quieted.

The interest claimed by Newman was by reason of a mortgage executed and delivered to her by one Joseph Desnoyers, who claimed to be, at the time of the execution of said mortgage, the owner of said premises.

This claim of Newman was set up by her in an answer and cross-petition filed in the case last named, and upon her motion the defendant in this action was made a party defendant, and in her said cross-petition the said Newman made the following averment: "That the defendant, L. T. Dennison, claims to own the tax-title of said premises," and she prayed that he be required to answer, setting up his claim "to or in said premises and in default thereof" that he be forever barred.

Summons was issued upon such cross-petition for said Dennison and duly served upon him.

To this cross-petition, the defendant Dennison filed no answer or other pleadings of any sort.

Upon the trial of that action, the defendant Newman was found to have no interest in the premises.

The case was appealed to this court, and, upon trial here, this court, on February 7, 1898, entered a decree finding the issues with the plaintiffs and saying, among other things, as to the premises, as follows: "And the same are hereby quieted as against the defendants and each one of them and all persons claiming under them, or any of them * * * and said defendants and each and every one of them and all persons claiming under them, are hereby forever enjoined from setting up any claim to said premises, or any part thereof, adverse to the title and the possession of said plaintiffs thereto, or in any manner interfering with their use and enjoyment of the same."

On the part of the plaintiffs here, it is urged that this decree, which stands unreversed, is a complete bar to any claim existing at the time of the entering of said decree, which the defendant can now make in said premises. While, on the other hand, it is urged that, as the plaintiffs in the former action did not make the defendant in this action a party, and claimed no relief against him, such decree is not a bar as to him: so

that we have the question before us as to the effect of this decree upon the defendant Dennison.

In 2nd Black on Judgments, sec., 667, this language is used: "In an action to quiet title, all matters affecting the title of the parties to the action may be litigated and determined, and the judgment therein is final and conclusive."

Sec., 616 of the same work uses this language: "It appears to be generally accepted doctrine that the judgments of a court of competent jurisdiction is conclusive as to all questions within the issue, whether formally litigated or not."

The authorities cited in support of the sections quoted fully sustain the text.

In Covington & Cincinnati Bridge Co. v. L. Sargent, 27 Ohio St., 233, the first clause of the syllabus reads:

"In a judicial proceeding in a court of record, where a party is called upon to make good his cause of action or establish his defense, he must do so by all the proper means within his control, and if he fails in that respect, purposely or negligently, he will not afterwards be permitted to deny the correctness of the determination, nor to relitigate the same matters between the same parties." And on page 238 of the opinion, the court quotes, with approval, this language, from 1st Johnson's Cases, 492: "The general principle, that the judgment or decree of a court possessing competent jurisdiction shall be final as to the subject matter thereby determined, is conceded by both sides, and can admit of no doubt. The principle, however, extends further. It is not only final as to the matter actually determined, but as to every other matter which the parties might litgate in the cause, and which they might have had decided. The reason in favor of this extent of the rule appears to me satisfactory. They are found in the expediency and propriety of silencing the contentions of parties, and of accomplishing the ends of justice, by a single and speedy decision of all their rights. It is evidently proper to prescribe some period to controversies of this sort; and what period can be more fit and proper than that which affords a full and fair opportunity to examine and decide all their claims? This extent of the rule can impose no hardship. It requires no more than a reasonable degree of vigilance and attention; a different course might be dangerous and often oppressive. It might tend to unsettle all the determinations of law, and open a door for infinite vexation. This reasoning is founded in good sense and supported by the weight of authority."

From these authorities, and others quoted from in the plaintiff's brief, and numerous others which might be cited, we hold that the decree in the former case is a bar to any claim which the defendant in the present case might have made in that case. And there can be no doubt that he might have made the claim there which he makes here. True, the plaintiffs in that action did not make him a party, but they averred that they were the owners in fee simple of the premises in question. This defendant was made a defendant in that action, as has already been said, upon a motion of one of the original defendants, but, having been served with summons, if he claimed any right in the premises, diligence would have required of him to examine the pleadings which had been filed. Such an examination would have disclosed to him this claim of the plaintiffs that they were the owners in fee simple. If that claim were true, he had no lien upon the premises. This, then, was, if fact, a challenge of any lien which he

might claim. Having failed to answer such challenge in that action, it is too late for him now to answer it.

The court has not overlooked Parmenter v. Binkley, 28 Ohio St., 32, which was an action brought by Parmenter to quit title as against Mrs. Binkley. A decree in a former case was set up as a defense in that action. It is clear from the opinion, however, that, though Mrs. Binkley was made a defendant in that action by the plaintiff in an amended petition, there was no averment in the petition which challenged her right of dower in the premises. Such right was challenged, however, by an answer filed by Peter Face. No process was issued for her upon this cross-petition, so that she was never called upon to answer it; and the court, in the opinion, on page 35, in speaking of this matter, use this language:

"If this Peter Face answer had been a cross-petition, making Malinda Binkley party to it; had it contained the proper averments, asking judgment, sale, and that she be ever foreclosed of her rights, and had she appeared and answered to such cross-petition; or if process had issued, regularly making her a party to such a cross-petition, and she had failed to answer, it might, perhaps, be difficult to hold that she was not barred."

The decision in this case does not seem to us in any wise to militate against the conclusion to which we have arrived in the case under consideration.

Another question is raised in the case, growing out of the payment by the defendant of the taxes for 1898.

At the time of such payment, the former case was pending in the Supreme Court of the state. The judgment of this court has since been affirmed by that court; but the defendant still claimed to be the owner or have rights in the premises, by reason of his tax deed, and could not then know what the result of the case in the Supreme Court would be.

In Nowler v. Coitt, 1 Ohio St., 519, the court, in its opinion on page 523, use this language:

"The amount paid for taxes stands upon a very different ground. These were chargeable by law upon the land, and the payment was a direct benefit to the plaintiffs. It was their duty to pay. In case they failed to do this, the land was liable to be sold for taxes. They have derived a benefit from the payment, and, in equity, ought to refund the money. In one sense the defendant is a mere volunteer in making the payment; but when the owner of the land in such case omits to pay taxes as they fall due, he adopts payment made by such volunteer, and as to that, constitutes his as him agent, by recognizing the act. Perhaps a court of equity might not, in every case of such volunteer, and upon his application, decree a lien for the taxes; but where these taxes have been paid under an opinion that the person who paid them owned the land, and when the true owners come into equity to examine that claim of ownership and to have it quieted the rule that he who askes equity must do it, strictly applies."

It seems to us, that the principle announced in this case is applicable to the case under consideration. And, without further discussion, the decree of the court will be: That upon payment by the plaintiffs to the defendant of the sum paid by him for taxes in 1898, with interest, and upon the payment of the costs of these proceedings, the title of the plaintiffs will be quieted as against the defendant.

*W. H. Polhamus* for plaintiff.

*L. T. Denison* for defendant.